# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WILLIE LEE WIMBERLY,

     Petitioner,

v.

PAT WARREN,

     Respondent.

CASE NO. 2:18-11011
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR A WRIT OF HABEAS CORPUS AND (2) A CERTIFICATE OF APPEALABILITY

Willie Lee Wimberly ("petitioner"), incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney S. Allen Early, III, petitioner challenges his conviction for first-degree murder, M.C.L.A. § 750.316, conspiracy to commit murder, M.C.L.A. § 750.157a, witness intimidation, M.C.L.A. § 750.122(8), and felony-firearm, M.C.L.A. § 750.227b. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Washtenaw County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

In this consolidated appeal, defendant appeals from two separate jury convictions, both of which arose out of defendant's involvement in the shooting death of Brandon Charles to keep Charles from testifying against defendant in another criminal proceeding. The other criminal proceeding, in Wayne County, also involved shooting Charles: defendant was the driver of a vehicle involved in a road rage incident that culminated in one of defendant's passengers nonfatally shooting Charles and his fiancée, Seylon Dudley. Defendant attempted to bribe Charles to keep him from testifying at a preliminary examination, and, when that attempt failed, defendant engineered Charles's death, although defendant was not the individual who personally carried out the killing. Defendant was convicted in the Wayne County case of two counts of assault with intent to commit murder on an aiding and abetting theory. That matter was the subject of a prior appeal to this Court.

In the instant appeal, defendant was charged with numerous offenses arising out of Charles's death. The proceedings were complicated by the discovery that the testimony of Sophie Peak, upon which defendant was first bound over, was perjured; defendant was subsequently bound over again based on the testimony of Avantis Parker. At defendant's first trial, Terrance Parker, the alleged shooter and Avantis's half-brother, was a co-defendant before a separate jury, which acquitted him. Defendant's jury convicted him of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a concealed weapon (CCW), MCL 750.227, but deadlocked on the remaining charges.

Defendant was retried, with another coconspirator, Lawrence Matthews, and the second jury convicted him of first-degree murder, MCL 750.316, conspiracy to commit murder, MCL 750.157a, witness intimidation, MCL 750.122(8), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The theory of the instant combined cases is that defendant was the orchestrator and initiator of a scheme to kill Charles to keep Charles from testifying in the Wayne County case. Defendant provided the murder weapon, even though he was not present during the murder itself. Specifically, defendant had Avantis arrange a meeting with Charles, ostensibly for the purpose of purchasing marijuana. Defendant provided Matthews with a "burner" gun to kill Charles, and Matthews and Terrance came along with Avantis. They were to wait to kill Charles until after Avantis had purchased the marijuana and the other person in Charles's car had left. Generally, defendant would eliminate persons against whom he sought retribution for perceived wrongs by enlisting the help of close friends or relatives to carry out the actual killings by setting up seemingly innocent meetings or transactions with the unsuspecting victims, and by supplying a weapon to the confederate tasked with the actual killing.

Consistent with that theory, the testimony was admitted at both trials from Avantis regarding the [Mychal] Reeves murder. The Reeves murder occurred in 2011 and was carried out by Terrance. According to Avantis, Terrance told him that he did so at defendant's instigation in retaliation for Reeves previously shooting at Terrance's father and defendant, and for possibly killing defendant's brother. Defendant again provided the gun used. Matthews arranged a meeting with Reeves at Reeves's home for a supposed scam involving iPhones, and he provided a way for Terrance to enter Reeves's home. Terrance shot and killed Reeves while Matthews was present. Terrance and Matthews then returned the gun to defendant.

*People v. Wimberly*, No. 322923, 2016 WL 1673091, at \*1, \*4 (Mich. Ct. App. Apr.

26, 2016) (internal footnotes omitted).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 923, 888 N.W.2d 78 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred in admitting other crimes evidence in violation of Rule 404(b) where the evidence was not offered for a proper purpose and was unfairly prejudicial and where the witness testified on the basis of hearsay about declarant (Terrance Parker) who was not shown to be unavailable by the court for this trial, all in violation of Evidence Rule 804(a)(1) and 804(b)(3) and the Due Process Clause and fair trial clause of the United States Constitution, Amendments V and XIV.

II. The testimony by a police officer that co-defendant Matthews's testimonial statement against Defendant was the same as witness Avantis Parker's statement and testimony against Defendant constitutes police misconduct which violates *Bruton v. United States* and *Crawford v. Washington*, therefore denying Defendant his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution and also denying Defendant due process under the Fifth and Fourteenth Amendment. In addition, the aforesaid testimony, in and of itself, violates *Bruton* and *Crawford* without regard to misconduct.

III. Defendant was denied due process of law and a fair trial when the People's witness was allowed to give expert and hearsay testimony without being qualified by the court as an expert witness and without proper foundation and where the witness was not qualified to give expert testimony. In addition, this testimony violated Evidence Rule 702 and Defendant's right to due process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution.

IV. Avantis Parker's reference to his passing a polygraph test was prejudicial, a denial of due process and requires a new trial.

V. The police committed misconduct by improperly vouching for Avantis Parker's testimony and denied Defendant due process under the Fifth and Fourteenth Amendments to the United States Constitution.

VI. Trial counsel was ineffective, and Defendant was denied his Sixth Amendment right to counsel.

VII. Defendant was denied his Fifth and Fourteenth Amendment due process right to a fair trial from the cumulative effect of the prejudicial errors at his trial.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Court notes that the Michigan Court of Appeals reviewed and rejected several of petitioner's claims under a plain error standard because he failed to preserve the issues as a constitutional claim at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017), *cert. denied* 138 S. Ct. 1998 (2018).[1]

## III. DISCUSSION

### A. Claim # 1. The prior bad acts evidence claim.

Petitioner first contends that he was denied a fair trial by the admission of evidence involving the 2011 murder of Mychal Reeves because it was more prejudicial than probative and was admitted in violation of M.R.E. 404(b) for the sole purpose of establishing that petitioner had a propensity to commit murder.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68

---

[1] Respondent urges this Court to deny these claims on the ground that they are procedurally defaulted because petitioner failed to object at trial. Petitioner argues in his sixth claim that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

(1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle him to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012) (emphasis in original). The Michigan Court of Appeals concluded that this evidence was relevant and admissible under Michigan law for various reasons. *People v. Wimberly*, 2016 WL 1673091, at *4-5. This Court must defer to that determination.

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting evidence of the prior murder of Reeves is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court

conviction based on their belief that the state trial judge erred in ruling that prior

injury evidence was admissible as bad acts evidence under California law);

*Dowling v. United States*, 493 U.S. 342, 352-53 (1990) (admission at defendant's

bank robbery trial of "similar acts" evidence that he had subsequently been

involved in a house burglary for which he had been acquitted did not violate due

process). The admission of this "prior bad acts" or "other acts" evidence against

petitioner at his state trial does not entitle him to habeas relief, because there is no

clearly established Supreme Court law holding that a state court violates a habeas

petitioner's due process rights by admitting propensity evidence in the form of

"prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.

2003). Given the lack of holdings by the Supreme Court on the issue of whether a

state court violates a habeas petitioner's due process rights by the admission of

evidence to establish the petitioner's propensity to commit criminal acts, the

Michigan Court of Appeals' rejection of petitioner's claim was not an

unreasonable application of clearly established federal law. *See Wright v. Van

Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner further contends that the trial judge erred in admitting Terrance

Parker's hearsay statements to Avantis Parker concerning the Reeves murder

because there was no showing that Terrance Parker was unavailable to testify, so

as to permit the admission of his out-of-court statements pursuant to the hearsay exception found in M.R.E. 804(a)(1).

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x. 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this hearsay in violation of Michigan's rules of evidence would not entitle petitioner to relief.

**B. Claim # 2. The Sixth Amendment claim.**

Petitioner argues that his right to confrontation was violated at his second trial when Chief Everette Robbins testified, in response to a question from defense counsel, that co-defendant Matthews's statement to the police about the murder of Charles was consistent with the statement given by Avantis Parker concerning the crime. Petitioner claims that this violated his Sixth Amendment right to confrontation because Matthews did not testify at their joint trial.

The Michigan Court of Appeals rejected this claim at length:

We note initially that the police detective in question had already been excused when defendant insisted that the detective be recalled because his testimony might have left the jury with the possibility that defendant had been in the car, even though the prosecutor noted that no one had made that argument and no one would. The detective was nevertheless recalled, and defendant probed the detective regarding details of the police investigation that ultimately excluded defendant from having been in the car. During the course of that testimony, the detective enumerated a list of reasons and noted that "the totality of those circumstances led us to believe that [Peak] possibly wasn't being truthful. We followed the evidence. We did the right thing and that's what our concern was." In response to a jury question asking whether anything other than Peak had indicated whether or not defendant was in the car, the detective additionally referenced statements made by Matthews and Avantis, noted that they were consistent with each other, and concluded by noting what he "believed" on that basis.

Notably, the actual statements made by Matthews were not admitted. To the extent it might be possible to infer their contents, each reference to the statement and its "consistency" was in response to a question that expressly limited it to one of two issues: that the statement, along with other evidence, corroborated a video recording from Wal–Mart to lead the police to believe that Peak had lied during the preliminary examination, and that defendant was not present in the car. Defendant's entire purpose in recalling the detective was to establish that defendant was not in the car, and he succeeded in doing so-consequently, it is difficult to understand how the testimony could have prejudiced him. Furthermore, the detective's remarks concerning his "beliefs" do not constitute improper vouching. After reviewing the remainder of the detective's testimony, it is abundantly clear that his use of variations on "I believe" was simply his personal mannerism to express conclusions that he drew. Defendant's assertion that, somehow, the jury could infer that Matthews's statement and Avantis's statement were the same on every issue is not supported by the evidence.

Ultimately, when reviewed in context, each statement simply indicated that Matthews had made a statement and that, based on the corroborating nature of his statement with Avantis's statement and the Wal–Mart video, the police did not "believe"—i.e., the evidence did not show—that defendant was in the car with Terrance and Avantis when the shooting occurred. Accordingly, the statements were not error and defendant's claims of police and prosecutorial misconduct must fail.

*People v. Wimberly*, 2016 WL 1673091, at *7–8.

Where a co-defendant's incriminating confession is admitted at a joint trial and the co-defendant does not take the stand, a defendant is denied the constitutional right of confrontation, even if the jury is instructed to consider the confession only against the co-defendant. *Bruton v. United States*, 391 U.S. 123, 127-128 (1968). However, no *Bruton* violation results where the statement does not expressly implicate a defendant in the charged offense because such a statement would not be "powerfully incriminating." *Richardson v. Marsh,* 481 U.S. 200, 208 (1987); *Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir. 1991). Indeed, *Bruton's* "narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions," *Marsh*, 481 U.S. at 206-07, is applicable only when a "codefendant's confession 'expressly implicat[es]' the defendant as his accomplice." *Id.* at 208 (quoting *Bruton*, 391 U.S. at 124 n. 1).

In the present case, the actual contents of Matthews's statement were not admitted into evidence. Additionally, the reference by Chief Robbins to

Matthews's statement and its consistency to Avantis Parker's statement was made in the context of answering defense counsel's questions concerning how the police had determined during their investigation that petitioner was not in the car at the time of the murder. Defense counsel sought to elicit this testimony in an attempt to exonerate petitioner of the murder. Petitioner's Sixth Amendment rights were not violated because references to Matthews's statement did not expressly implicate petitioner as an accomplice to any crime and if anything at least partially exculpated petitioner by suggesting that Matthews's and Parker's statements corroborated that petitioner was not in the car when the murder took place. *See, e.g., United States v. Simpson*, 116 F. App'x. 736, 741-42 (6th Cir. 2004), *vacated on other grounds sub nom. Bowers v. United States,* 543 U.S. 995 (2005). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The expert witness claim.

Petitioner next contends that his right to a fair trial was violated when the prosecutor elicited expert and hearsay testimony from Detective Mark Newmann concerning cell phone locations and cell phone towers even though that officer had not been qualified as an expert on these issues.

The admission of expert testimony in a state trial involves an issue of state law that does not warrant federal habeas relief, unless the evidence violates due

process or some other federal constitutional right. *See Keller v. Larkins,* 251 F.3d 408, 419 (3rd Cir. 2001). A federal district court cannot grant habeas relief on the admission of an expert witness's testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness's testimony on that particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008).

Petitioner relies primarily on the United States Supreme Court case of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) to support his claim that the officer's expert testimony was inadmissible. However, the Supreme Court's holding in *Daubert* involves the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F.3d 314, 335 (6th Cir. 1998); *see also Anderson v. Jackson,* 567 F. Supp. 2d 973, 983 (E.D. Mich. 2008) (*Daubert* decision concerning the admission of expert testimony was concerned with the Federal Rules of Evidence and, thus, did not apply to state criminal proceedings). Petitioner's third claim is non-cognizable.

**D. Claim # 4. The polygraph evidence claim.**

Petitioner next contends that he is entitled to a writ of habeas corpus because Avantis Parker made a reference to taking a polygraph examination, thus,

14

the trial court should have granted petitioner's request for a mistrial.

The Supreme Court has never held that testimony or evidence that implies the results of a polygraph or similar test renders a criminal defendant's trial fundamentally unfair in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Maldonado v. Wilson,* 416 F.3d 470, 477 (6th Cir. 2005).  To grant habeas relief to petitioner "would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests." *Id.* at 478.  Because no Supreme Court precedent demands this result, the Michigan Court of Appeals' rejection of petitioner's claim was not unreasonable under 28 U.S.C. § 2254(d). *Id.*

Moreover, the Sixth Circuit on direct review of federal criminal convictions has "refused to impose a *per se* prohibition against polygraph evidence, and the mere mention of the words 'polygraph examination' does not entitle a defendant to a new trial." *United States v. Odom*, 13 F.3d 949, 957 (6th Cir. 1994).

The Michigan Court of Appeals rejected petitioner's claim:

It was in fact the prosecutor who cut off the witness during a defense cross-examination to preclude any further references, and both parties sought a cautionary instruction. The reference appears to have been an inadvertent and natural response to defense counsel's question. The reference also does not appear to have been intended to bolster

Avantis's credibility, and the results of the test were not admitted—indeed, they were not even referenced. Additionally, defendant has provided no indication, and we can find none in the record, to suggest that the reference actually had the slightest effect whatsoever on the outcome of the proceedings.

Consequently, we are unable to discern any reason why the trial court's refusal to grant a mistral constituted an abuse of discretion.

*People v. Wimberly*, 2016 WL 1673091, at *9 (internal citation omitted).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F.3d 432, 436 (6th Cir. 2007). In light of the fact that Parker's statements about taking a polygraph were unsolicited, the results of the polygraph were not admitted into evidence, and that the judge instructed the jurors to disregard any evidence regarding the polygraph, the trial judge did not clearly err in denying petitioner's motion for a mistrial. *See United States v. Walton,* 908 F.2d 1289, 1292-94 (6th Cir. 1990).

## E.  Claim # 5.  The improper vouching claim.

Petitioner claims that Chief Robbins improperly vouched for the testimony of Avantis Parker and the statement of co-defendant Matthews when he testified that their statements were consistent. Petitioner claims that in so testifying, Chief Robbins gave improper opinion testimony as to the guilt or innocence of

petitioner.

Petitioner is not entitled to habeas relief because there is no clearly established law as determined by the Supreme Court that prohibits a police officer from offering an opinion regarding a criminal defendant's guilt or innocence.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

The Sixth Circuit's holding in *Cooper* does not entitle petitioner to habeas relief for several reasons.

First, Chief Robbins was not presented as an expert witness at petitioner's trial. Secondly, the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. (Tr. 11/13/2014, p. 185). These two facts alone distinguish petitioner's case from the situation in *Cooper*. *See, e.g., Norton v. Boynton,* No. No. 08–13200, 2011 WL 282433, at *8 (E.D. Mich. Jan. 26, 2011). Third, "*Cooper* was decided prior to Congress' adoption of the AEDPA...so the *Cooper* court owed no deference to the state court decision on

these issues." *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010). The judge in *Dorsey* indicated that he was "unable to locate a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.* Given the lack of holdings by the Supreme Court on the issue of whether a police officer can offer an opinion as to a criminal defendant's guilt or innocence, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. at 126. Petitioner is not entitled to habeas relief on his fifth claim.

### F. Claim # 6. Ineffective assistance of counsel claims.

Petitioner next contends that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id*. In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be sound

trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that

such performance prejudiced his defense. *Id.* To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one.

'The likelihood of a different result must be substantial, not just conceivable.'"

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562

U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the

defendant who raises a claim of ineffective assistance of counsel, and not the state,

to show a reasonable probability that the result of the proceeding would have been

different, but for counsel's allegedly deficient performance. *See Wong v.*

*Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal

court believes the state court's determination' under the *Strickland* standard 'was

incorrect but whether that determination was unreasonable-a substantially higher

threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner first raises several claims relating to the alleged *Bruton* error that he raised in his second claim. Petitioner argues that trial counsel was ineffective for asking Chief Robbins the question that lead to him referencing Matthews's statement. Petitioner also argues that trial counsel should have moved for a mistrial after the reference to Matthews's statement was made. Petitioner also

argues that trial counsel should have objected when Chief Robbins twice repeated his testimony concerning the consistency of Matthews's and Parker's statements in response to juror questions and should have again moved for a mistrial after this statement was repeated. Petitioner also claims that defense counsel should have objected to the prosecutor approving the juror questions, knowing that they would invoke an answer that would violate *Bruton.*

As mentioned when discussing petitioner's second claim, Chief Robbins's testimony regarding the consistency of Matthews's statement to Parker's did not violate the holding in *Bruton,* accordingly, counsel's failure to object to this testimony or to move for a mistrial on this basis did not amount to ineffective assistance of counsel. *See United States v. Johnson*, 581 F. 3d 320, 328 (6th Cir. 2009).

Petitioner next contends that trial counsel should have objected to the prosecutor's failure to qualify Detective Newmann as an expert witness regarding cell phone towers and their interactions with cell phones.

The Michigan Court of Appeals had rejected petitioner's challenge to the admissibility of Detective Newmann's testimony, finding that the record established that the detective was qualified to provide the testimony he did regarding cell phone locations and towers. *People v. Wimberly*, 2016 WL

1673091, at *8–9.

In light of the fact that the Michigan Court of Appeals concluded that Detective Newmann was qualified to testify as an expert on cell phone towers and locations, petitioner has failed to show a reasonable probability that Detective Newmann's expert testimony would have been excluded had an objection been made, thus, petitioner is not entitled to habeas relief on this claim. *See Pillette v. Berghuis*, 630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grounds,* 408 F. App'x 873 (6th Cir. 2010), *cert. denied* 132 S. Ct. 125 (2011).

Petitioner next contends that trial counsel was ineffective for failing to obtain the transcripts from his first trial in order to effectively cross-examine and impeach Seylon Dudley regarding her photo identification of petitioner in his Wayne County case, where she had been a witness to the earlier altercation between Charles and petitioner and had herself been shot. Petitioner specifically points to trial counsel's failure to impeach Ms. Dudley with the fact that she had seen petitioner on television prior to identifying him in court and failure to elicit testimony that the prosecutor had given Ms. Dudley information to help her identify petitioner in a photographic lineup.

The Michigan Court of Appeals rejected this claim:

> Defendant bases another allegation of ineffective assistance on the failure to obtain the transcripts of the first trial in order to effectively cross-examine Dudley regarding her photo identification in the Wayne County case. As we discussed in Section III, this Court ruled in *Wimberly*, Docket No. 321490, unpub. at 14–15, that there was no misconduct and that the identification was not unduly suggestive. Counsel cannot be faulted for failing to obtain a transcript that would not have revealed anything useful.

*People v. Wimberly*, 2016 WL 1673091, at *10.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

In the present case, petitioner's trial counsel at the second trial cross-examined Dudley at great detail concerning the identification of petitioner. In response to counsel's questions, Dudley admitted that the only person she identified at a lineup was the co-defendant Matthews and even then, she was not one hundred percent sure of her identification, narrowing her choice down to two persons in the lineup. Dudley admitted that she was never shown a lineup with petitioner in it. Dudley admitted that she had not known petitioner prior to the

shooting. Dudley conceded that the first time she identified petitioner was in court. (Tr. 11/4/14, pp. 254-58). Dudley was asked by counsel whether she had seen petitioner on television and she responded: "I don't believe so. Not at that moment, no." (*Id.* at p. 258). Counsel again asked Dudley whether she might have told the detectives that she had seen petitioner on television. Her reply was: "I don't believe so. I mean if I did." (*Id.*). Defense counsel later confronted Ms. Dudley with the fact that although she now said that she was one hundred percent certain of her identification of co-defendant Matthews, as opposed to her earlier equivocal identification, this was only after Dudley had seen him in court. (*Id.* at pp. 271-72).

Although other attorneys might have reached a different conclusion about the value of cross-examining Ms. Dudley in greater detail, counsel's strategic choice not to further cross-examine Dudley was "'within the wide range of reasonable professional assistance.'" *See Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Indeed, a counsel's strategic choice to forego more in-depth cross-examination is "virtually unchallengeable." *Id.* Defense counsel did not perform ineffectively by not more forcefully cross-examining Ms. Dudley, particularly when the effect of further probing was entirely speculative on petitioner's part. *See Jackson v. Bradshaw,*

681 F.3d 753, 764-65 (6th Cir. 2012).

**G. Claim # 7. Cumulative errors/actual innocence.**

Petitioner finally contends that he is entitled to habeas relief because of the cumulative errors and that he is actually innocent.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

Petitioner is not entitled to relief on an actual innocence claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id.; see also McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence

are not cognizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith*, 219

F. Supp. 2d 871, 885 (E.D. Mich. 2002).

## IV.  CONCLUSION

Accordingly, the Court DENIES WITH PREJUDICE the petition for a writ

of habeas corpus.  The Court further DENIES a certificate of appealability.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 27, 2018

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each
attorney or party of record herein by electronic means or first class U.S. mail on
November 27, 2018.


s/Deborah Tofil
Case Manager